Argued October 8, affirmed October 21, 1924

## ALEXANDER M. PAGE v. UNITED STATES NATIONAL BANK.

(229 Pac. 375.)

**Carriers—Pledgee Bank Held Entitled to Retain Shipping Papers as Collateral for Unpaid Notes of Pledgor.**

Where a bank advanced to a lumber company 80 per cent of shipping value of lumber shipped by it, taking its notes therefor, and, to secure them, bills of lading and other shipping papers were delivered to bank, which acted as collecting agent upon sale of lumber, *held* that, where company became insolvent and made an assignment for benefit of creditors, bank was entitled to retain such collateral security for unpaid notes.

From Multnomah: ROBERT G. MORROW, Judge.

---

1. Right of pledgee to sell collateral given to secure debt, see note in **Ann. Cas.** 1916B, 237.

See 10 **C. J.,** p. 204 (1926 Anno.).

Department 1.

The complaint in this action stated, or attempted to state, two causes of action, and without going into detail, the substance of it, as appears in connection with the oral statement of counsel upon the trial of the case, is that the plaintiff in this case was the partner of a man by the name of L. H. Briggs, under the firm name of Briggs-Page Lumber Company. They had a sawmill, located at Vancouver, Washington, and were engaged in milling and marketing lumber. In connection with the carrying on of their business, and to finance the same, the partnership made an arrangement with the United States National Bank of Portland, Oregon, that when the lumber company shipped a carload of lumber the bank would advance 80 per cent of the shipping value of the carload, taking the notes of the lumber firm for these advances. To secure these notes the bills of lading and other shipping papers were delivered to the bank; it acting in the usual course of business as collecting agent when sales were made. About the first day of November, 1919, the partnership became insolvent and made an assignment for the benefit of its creditors. The nature of the assignment is not clear, and the deed or other instrument constituting such assignment does not appear in the case, excepting in so far as it was stated upon the argument on the motion for nonsuit, and in appellant's brief, that it was a common-law assignment, and not a statutory assignment. The assignment was made to one F. M. Kettenring, as trustee.

The complaint in this case contains two separate causes of action. The first is for a balance of $1,235.98 alleged to be due from the bank upon a

series of consignments made by the lumber company and the proceeds of which were collected by the bank. The second cause of action is a claim for damages based upon the following allegations:

"That on or about the 25th day of September, 1919, the said firm consigned to itself at Council Bluffs, Iowa, for sale to J. W. McCausey & Company, of Detroit, Michigan, a certain carload of lumber, the same being car C. M. & St. P. 47493, at the invoice price of $1645.09 upon which shipment the bank advanced to said firm the sum of $990.00, and said firm gave to the bank its sixty (60) day negotiable promissory note for said amount, together with interest at eight (8) per cent per annum, and said firm assigned to the bank the shipping documents connected with said shipment and all of the right, title and interest of the firm to the account represented by said shipment. That on or about the 26th day of September, 1919, said firm consigned to itself at Council Bluffs, Iowa, another carload of lumber for sale to said McCausey & Company, loaded on car P. M. 70616 at the invoice price of $2078.39, and in connection therewith received from said bank an advance on account of said shipment of $1254.00 for which amount the said firm executed and delivered to the bank its sixty (60) day negotiable promissory note, with interest at eight (8) per cent per annum, and as further security assigned to the said bank all the shipping documents in connection with said shipment, and likewise assigned to the bank its right, title and interest in and to the amount represented thereby. That on or about the 27th day of September, 1919, the said firm consigned to itself at Council Bluffs, Iowa, for sale to the above mentioned McCausey & Company a third carload of lumber, loaded on car Erie 101139, at the invoice price of $1262.56, upon which said bank advanced to the said firm the sum of $707.00, for which amount said firm executed and delivered to the bank its negotiable promissory note payable in sixty (60) days, with interest at eight (8) per cent per annum, and assigned to the bank all shipping docu-

ments connected with said shipment, and also all the firm's right, title and interest in and to the account represented thereby. That on or about the 25th day of September, 1919, the said firm consigned to itself at Council Bluffs, Iowa, for sale to John D. Merschon Lumber Company, at Bay City, Michigan, a certain carload of lumber loaded on M. C. R. R. 6535, the invoice price of car being the sum of $2127.89, of which amount the bank advanced to said firm the sum of $1248.00, taking the sixty (60) day negotiable promissory note of said firm with interest at eight (8) per cent per annum, for that amount, and also an assignment of all shipping documents and all of the right, title and interest of said firm to the account represented by such shipment.

"That soon after the dates of said shipments the purchasers gave notice of the cancellation of their orders for the same, and thereupon the bank caused the said shipments to be diverted to Bay City, Michigan. That said car C. M. & St. P. No. 47943 arrived at Bay City, Michigan, on December 4th, 1919, and said Erie Car No. 101139 arrived there on December 3rd, 1919, and said M. C. car No. 6535 arrived at said city on November 8th, 1919, and said car P. M. No. 70616 arrived at said place on November 12th, 1919.

"That the bank negligently and carelessly failed to exercise ordinary diligence in disposing of said carloads of lumber at Bay City, Michigan, or at all, and permitted the same to remain in transit and on the cars in the railroad yard at said place until the said cars were sold by the railroad companies for freight and demurrage, whereby said shipments, and the entire value thereof, were lost to the said firm and to the said trustee. The proceeds of such sales not being sufficient to even cover the freight and demurrage which had accumulated.

"That when it became advisable to divert said shipments as above mentioned the trustee mentioned in the first cause of action herein, and this plaintiff, offered to take charge of said shipments and sell the same, and several times made an offer so to do

to the bank, but the bank refused to permit the trustee or this plaintiff to take charge of said shipments or to have anything to do therewith, and insisted on retaining full charge thereof and in every way handling the same exclusively, and as the bank was in possession of the shipping documents, and besides had the assignments from said firm of all its right, title and interest in the accounts connected with said shipments as above set forth, the trustee and this plaintiff and his said partner were powerless to do anything about making sale of said lumber, and were obliged against their will to leave the whole matter in the hands of the bank.

"That during the period from the diversion of said shipments and from the dates of the arrival thereof at Bay City, Michigan, there existed in that city and in all the region tributary thereto, as well as in many other places in the United States, an extraordinary demand for lumber of the kind comprised in said shipments, and that from said dates until the 1st of April, 1920, there was an active rising market for said lumber in the above places, and after April 1st, 1920, there was only a slight decline during that and several succeeding months. That said lumber and the whole thereof could have been sold in the above market at a material advance over said invoice price and that had the bank exercised ordinary diligence in the handling of said shipments same would have been sold at a material advance over said invoice price, but that the bank carelessly and negligently failed to exercise ordinary diligence in the matter; failed to look after said shipments or offer the said lumber for sale, but negligently, wrongfully and carelessly allowed the same to remain on the tract unsold, subject to accruing demurrage and freight charges, until the same was sold in the month of April, 1920, for freight charges and demurrage as above mentioned, to the great damage of said firm and its trustee.

"That with the exercise of ordinary diligence and care, the bank could have sold said lumber at Bay City, Michigan, upon the arrival thereof, or very soon thereafter, in due course of business, for the sum

of $9635.12; that the freight on said shipments aggregated $1944.32, leaving as net proceeds, at the market price of the sale of said lumber, and for which the same should have been sold as above stated, the sum of $7690.79, in which amount the said firm and trustee were damaged by the negligence of the defendant bank.

"That all the rights of action accruing to said firm to the trustee thereof above mentioned were for a valuable consideration on the 28th day of March, 1921, assigned to the plaintiff herein, as shown by the assignment mentioned in the first cause of action, marked 'Exhibit A' and attached hereto, and that ever since the plaintiff has been and now is the sole owner and holder of said rights of action. That as such assignee the plaintiff has made a demand upon the bank for the above mentioned sum, which demand has been refused."

The complaint concludes with prayer for damages in the sum of $1,235.98 upon the first cause of action, and $8,926.77 upon the second. Upon the plaintiff's attorney making his opening statement, which comprises substantially the matters stated in the complaint, the defendant moved for a nonsuit and dismissal of the action on the ground that the complaint did not state facts sufficient to constitute a cause of action, and that the facts, as detailed in the opening statement, did not show any cause of action against the defendant. The court treated the motion as a demurrer and allowed it, and from a judgment for defendant thereupon ensuing plaintiff appeals.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. B. G. Skulason.*

For respondent there was a brief over the name of *Messrs. Platt & Platt, Montgomery & Fales,* with an oral argument by *Mr. H. G. Platt.*

McBRIDE, C. J.—The condition of the record here is very unsatisfactory. The abstract shows that the defendant answered, but the answer is not here, and we are at a loss to know what the real issues were, except as we may infer from the argument upon the motion that they were sufficient to put at issue every fact stated in the complaint. Concerning the nature of the assignment made by the Briggs-Page Company, beyond the statement that it was a common-law assignment, we have no information, and describing an assignment as a common-law assignment is about as definite as describing a quantity of cheese by alleging that it was a piece of cheese, as common-law assignments may be general or special, or with or without preference, or in as many forms as the human mind can conceive. However, we take it that it was intended that it was an assignment for the benefit of all of the creditors, whether preferred or not. But, taking the complaint as a whole, it indicates on its face that the Briggs-Page Lumber Company at the time of the assignment was indebted to the bank upon the company's promissory notes to the amount of several thousand dollars; that the company shipped this lumber, consigned to itself at Council Bluffs, Iowa, to be there sold to certain parties at Bay City, Michigan, and that while the lumber was in transit the prospective purchasers countermanded their orders, leaving the carloads of lumber on the hands of the consignees, to be disposed of otherwise. There seems to be no question raised in the complaint but that shipping the lumber to Bay City from Council Bluffs was the thing desired by both parties, and the question around which this action revolves was concerning the disposition of the lumber after it arrived at Bay City. The trustee of the lumber company pro-

posed that the bank should turn over to him the
shipping receipts which the bank held as collateral,
and allow him to market the lumber, which it is
claimed the trustee could have done to better advan-
tage than the bank. This the bank refused to do.
There does not seem to have been any misunder-
standing at any time between the bank and the
lumber company or the trustee that the bank should
act as the agent of the parties in selling the lumber
or finding a purchaser for it, but the bank was
merely to collect the money when the lumber was
sold, pay itself what was due it, and turn the balance
over to the lumber company. There was no duty
imposed upon the bank actively to proceed to find a
purchaser for the lumber, and there was no right on
the part of the trustee or the lumber company to de-
mand and receive the collateral that the bank held
excepting upon payment of the notes. They did not
pay the notes; did not offer to pay them, nor so far as
the complaint shows, furnish any adequate security in
place of the collateral demanded, and in the absence of
these the lumber company had no right to demand the
bank to turn the lumber over to it, surrender its
collateral, and speculate upon the chances that the
trustee would be successful in selling the lumber and
in paying off the company's notes. The bank pre-
ferred to hold on to the collateral until it was paid.

When we come to analyze the case we find no legal
right on the part of the lumber company or the
trustee to demand of the defendant that it surrender
its collateral and turn the lumber over to their control
for sale, nor any duty upon the part of the defendant
to do this, or actively to proceed to sell the lumber.
The bank might, indeed, sell either the lumber or the
collateral as an incident in the collection of its notes,

but it was not bound to do either. To get possession of the collateral it was incumbent upon the trustee to pay the debt.

Concerning the first cause of action we have only to speculate upon what was pleaded, as the transcript contains only brilliant flashes of silence as to what the answer contained, but, very naturally, in face of the fact that the complaint shows that upon the whole transaction the lumber company was indebted to the bank in the sum of several thousand dollars, this would be a legitimate counterclaim, as far as it would go, and, as error is not shown by the abstract, we will not presume that it exists.

Based upon what appears in the meager transcript here we think the order of the court dismissing the complaint was correct. The judgment is affirmed.

AFFIRMED.

BURNETT, BEAN and COSHOW, JJ., concur.